# 23-1221

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆◆

DR. LORI A. BRIGHTMAN, AN INDIVIDUAL,

*Plaintiff-Appellant,*

—against—

INMODE LTD., A FOREIGN LIMITED LIABILITY CORPORATION,

*Defendant-Appellee,*

DOES 1-10, INCLUSIVE, ROE CORPORATIONS 11-20, INCLUSIVE,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT

JOSHUA T. REITZAS
BERLANDI NUSSBAUM & REITZAS LLP
125 Park Avenue, 25th Floor
New York, New York 10017
(212) 804-6329

*Attorneys for Plaintiff-Appellant*

# **TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii-v

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-9

SUMMARY OF THE ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

The District Court should be reversed because: (i) The 4th Agreement and Forum Selection Clause should not have been enforced due to the absence of consideration; (ii) the record before the Court shows that Dr. Brightman was fraudulently induced to sign the 4th Agreement and that there was pervasive fraud related to each of her claims; (iii) the 4th Agreement did not relate to or control the 2nd and 3rd contracts . . . . . . . . . . . . . . . . . . . . . . . . . 10

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

THE DISTRICT COURT'S DECISION SHOULD BE REVERSED BECAUSE IT FAILED TO ACCEPT ALL OF THE ALLEGATIONS IN THE FIRST AMENDED COMPLAINT AS TRUE AND TO RESOLVE REASONABLE INFERENCES IN FAVOR OF THE PLAINTIFF. THE RECORD SHOWS:

- PLAINTIFF HAD PERFORMED THE 1st AGREEMENT AND THERE WAS NO ADDITIONAL CONSIDERATION PROVIDED BY DEFENDANT TO SUPPORT ENFORCEMENT OF A NEW FORUM SELECTION PROVISION AND OTHER NEW TERMS CONTAINED IN THE 4th AGREEMENT . . . . . . . . . . . . . . . . . . . . . . . . 13

i

- THERE ARE SUFFICIENT ALLEGATIONS OF FRAUDULENT INDUCEMENT, AND THE FRAUD CLAIMS PERMEATE ALL OF PLAINTIFF'S CLAIMS, JUSTIFYING THE REFUSALTO ENFORCE THE FORUM SELECTION CLAUSE AND OTHER NEW TERMS IN THE 4TH AGREEMENT; AND, ...................... 13

- THE 4th AGREEMENT DID NOT EXPLICTLY ENCOMPASS the 2nd and 3rd AGREEMENTS TO PREVENT CLAIMS BASED ON QUASI-CONTRACT AND TORT THEORIES FROM PROCEEDING IN THE DISTRICT COURT ................................................ 13

    A. Standard of Review in the District Court .................... 13

    B. The April 5, 2009 1st Email Agreement was binding and performed before the 4th Agreement (which included the forum selection clause) was presented to Dr. Brightman. The 4th Agreement and the forum selection clause are not supported by new consideration to Dr. Brightman to modify the April 5, 2009 1st Agreement and support enforcement of the forum selection provision against her ........................ 14

    C. Dr. Brightman's claims rest in fraud and the complaint is permeated with allegations of fraud. She was fraudulently induced to sign the 4th Agreement which included the forum selection clause. She was fraudulently told she did not need paper work to secure her stock options and everything was all set. The 4th Agreement and forum selection clause should not be enforced against Dr. Brightman .............. 17

    D. The Court Erred in Concluding the 2nd and 3rd Agreements were subsumed into and subject to dismissal by the 4th Agreement and the Forum Selection Clause............................................... 25

CONCLUSION................................................................ 29

# TABLE OF AUTHORITIES

PAGE(S)

## Cases

*American Flint Glass Workers Union v. Beaumont Glass Co.*,
    62 F.3d 574 (3d Cir. 1995) ................................................. 12

*Asoma Corp. v. SK Shipping Co.*,
    467 F.3d 817 (2d Cir. 2006) ......................................... 11, 14

*Berkson v. Gogo LLC*,
    97 F. Supp. 3d 359 (E.D.N.Y. 2015)...................................... 16

*Clairdale Enters. v. C. I. Realty Investors*,
    423 F. Supp. 257 (S.D.N.Y. 1976) ............................... 19, 20, 21

*Cohen v. Koenig*,
    25 F.3d 1168 (2d Cir. 1994) ............................................. 18

*Daisy Indus., Inc. v. Kmart Corp.*,
    No. 96-CV-4211, 1997 U.S. Dist. LEXIS 16135,
    1997 WL 642553 (S.D.N.Y. Oct.17, 1997) .............................. 17

*DeSola Grp. v. Coors Brewing Co.*,
    199 A.D.2d 141, 605 N.Y.S.2d 83 (App. Div. 1993).................... 22

*Felton v. Walston & Co.*,
    508 F.2d 577 (2d Cir. 1974) ............................................. 18

*Foman v. Davis*,
    371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).................... 24

*Fox Paine & Co., LLC v. Houston Cas. Co.*,
    153 AD3d 673, 60 NYS3d 294 (2017).................................... 18

*Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgt., L.P.*,
    7 NY3d 96, 850 N.E.2d 653, 817 N.Y.S.2d 606 (2006) ................. 25

*General Motors Acceptance Corp. v. Clifton-Fine Cent. School Dist.*,
    85 NY2d 232, 647 N.E.2d 1329, 623 N.Y.S.2d 821 (1995) ............. 26

*Gomez v. USAA Fed. Sav. Bank*,
    171 F.3d 794 (2d Cir. 1999) ............................................. 24

PAGE(S)

*Gulf Ins. Co. v. Glasbrenner*,
    417 F.3d 353 (2d Cir. 2005) ................................................. 14

*Kakarla v. Penakalapati*,
    551 F. Supp. 3d 70 (W.D.N.Y. 2021) ..................................... 16

*Lamb v. Emhart Corp.*,
    47 F.3d. 551 (2d.Cir. 1995) ................................................. 15

*Lee v. BSB Greenwich Mortgage L.P.*,
    267 F.3d 172 (2d Cir. 2001) ......................................... 12, 14

*United States EPA ex rel. McKeown v. Port Auth.*,
    162 F. Supp. 2d 173 (S.D.N.Y. 2001) .................................... 13

*Nerney v. Valente & Sons Repair Shop*,
    66 F.3d 25 (2d Cir. 1995) ................................................. 24

*New Moon Shipping Co. v. Man B&W Diesel AG*,
    121 F.3d 24 (2d Cir. 1997) ........................................... 12, 14

*Ouaknine v. MacFarlane*,
    897 F.2d 75 (2d Cir. 1990) ................................................. 18

*Perrotti v. Becker, Glynn, Melamed & Muffly LLP*,
    82 A.D.3d 495, 918 N.Y.S.2d 423 (1st Dept. 2011) ..................... 17

*Petkanas v. Petkanas*,
    2021 NY Slip Op. 00581, 191 A.D.3d 708, 140 N.Y.S.3d 586 ....... 8, 22

*Phillips v. Audio Active, Ltd.*,
    494 F.3d 378 (2nd Cir 2007) .......................................... 11, 12

*ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*,
    564 F.3d 81 (2d Cir. 2009) ................................................. 28

*Revak v. SEC Realty Corp.*,
    18 F.3d 81 (2d Cir. 1994) ................................................. 18

*Signature Fin. LLC v. Neighbors Glob. Holdings*,
    LLC, 281 F. Supp. 3d 438 (S.D.N.Y. 2017) ........................... 22

*United States v. Jackson*,
    No. 21-CR-537-LTS, 2022 U.S. Dist. LEXIS 112285
    (S.D.N.Y. June 24, 2022) .......................................... 13, 16

iv

PAGE(S)

## Statutes

28 U.S.C. §1291 .................................................................. 1

28 U.S.C. § 1332 .................................................................. 1

28 U.S.C. §§ 2201-2202 ....................................................... 1

UCC § 8-113(a) ........................................................... 8, 23

## Other Authorities

5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*: Civil 2d § 1352 (1990 & Supp. 1999 ......................... 13

## Rules

FRCP 12(b)(3)................................................................... *passim*

# JURISDICTIONAL STATEMENT

The District Court had subject-matter jurisdiction under 28 U.S.C. § 1332 (diversity) and 28 U.S.C. §§ 2201-2202 (Declaratory Judgment Act). Plaintiff is a resident of Massachusetts. Defendant is not incorporated and does not maintain its principal place of business in New York. The amount in controversy is in excess of $75,000.00. Plaintiff also requested declaratory relief under the Declaratory Judgment Act based on the actual controversy within the District Court's subject matter jurisdiction. JA25-26.

This Court has jurisdiction over this appeal under 28 U.S.C. §1291. On August 14, 2023, the District Court issued an Opinion and Order Granting Defendant's Motion to Dismiss. The District Court entered Judgment on August 14, 2023 disposing of all of parties' claims. Plaintiff filed her Notice of Appeal on August 29, 2023. JA174.

## STATEMENT OF ISSUES

1.     Did the district court improperly conclude that the forum selection clause in the April 2010 agreement was enforceable despite: (a) the absence of consideration to support modification of the April 5, 2009 Email Agreement; and (b) allegations in the complaint and in the record evidencing that Dr. Brightman was fraudulently induced to sign the April 2010 agreement and Defendant's other fraud which permeated all of the claims?

2.     Did the trial court improperly dismiss Dr. Brightman's quasi-contractual and tort claims arising from verbal agreements made with InMode's President Brian Lodwig that were not part of the April 10, 2010 agreement?

## STATEMENT OF THE CASE

This lawsuit is about trust, hard work, deception, betrayal, and a fight for compensation owed by InMode. Plaintiff Lori A. Brightman ("Lori" or "Dr. Brightman") is a widely renowned, board-certified dermatologist and dermatologic surgeon. JA26 ¶¶7-8. The case arises from three (3) agreements between InMode and Dr. Brightman to compensate her for services. The facts establishing the three (3) agreements forming the basis for Dr. Brightman's claims are detailed with particularity in the first amended complaint (JA25-43), and the declarations of InMode's former President Brian Lodwig (JA44-46) and Dr. Brightman (JA141-45). Each of these three (3) agreements is summarized below:

***First Agreement: April 5, 2009 Email Agreement for 15 Patient Study***

On April 5, 2009, at the request of InMode's CEO Moshe' Mizrahy, Dr. Brightman agreed to perform services for Defendant InMode, Ltd. ("InMode") in exchange for 7,500 stock options when InMode went public. JA27-29, ¶¶15-16; JA142, ¶5. This Agreement was memorialized in an April 5, 2009 email with InMode's CEO. JA142, ¶5. Dr. Brightman performed and substantially completed this work by November 2009. JA25-43; JA142 ¶7. (For ease of reference, this is referred to as the 1st Agreement.)

3

### *Second Agreement: October 2009 RFAL Agreement*

In July 2009, InMode's President (Brian Lodwig) separately solicited Dr. Brightman to perform new discrete services for InMode related to InMode's RFAL product in exchange for stock options due when InMode went public. JA25-43, ¶¶22-23, 31; JA45, ¶¶5-6; JA143, ¶10. For reference, this is referred to as the 2nd Agreement. Dr. Brightman agreed to do the work related under the RFAL Agreement and she completed the work between 2009 and 2011. JA29-31, ¶¶22-27; JA45, ¶¶6-7; JA143, ¶¶10-12. By October 13, 2011 Dr. Brightman had earned 45,000 stock options due when InMode went public. JA30-32, ¶¶24, 26-27, 31, 33, 35; JA45, ¶¶6-8; JA143, ¶¶10, 12.

On October 13, 2011, Dr. Brightman specifically asked Brian Lodwig about the status of the 45,000 stock options she had earned for her RAFL work under the 2nd Agreement. JA31, ¶31; JA143. 26-1 ¶12. Brian Lodwig acknowledged she had earned the 45,000 stock options. JA45, ¶8. He assured her that "she was covered for those options," that no additional documentation was necessary, and that she was "all set." JA31, ¶31; JA143, ¶12.

### *Third Agreement: October 13, 2011 Fractora Agreement*

On October 13, 2011, Dr. Brightman met with Brian Lodwig and he requested that Dr. Brightman provide new services related to InMode's Fractora product. JA ¶¶37-39; JA-44-46, ¶¶9-10; JA143-44 ¶13. Dr. Brightman agreed to do the work

and provided the services requested. JA29-43, ¶40; JA46 ¶¶9-10; JA144-44 ¶13. For ease of reference, this is referred to as the 3rd Agreement.

As a result of these Fractora-related services under the 3rd Agreement, Dr. Brightman earned 10,000 additional shares due when InMode went public. JA34 ¶¶46; JA46, ¶10; JA143-44, ¶13.

### *Dr. Brightman suffers serious health issues, learns InMode went public, and is told by Mizrahy her options expired.*

After Dr. Brightman had completed work for InMode under these three (3) agreements, in June 2013, she began to endure a long series of serious medical conditions. JA144, ¶14. She was repeatedly hospitalized and medically required to leave her practice. *Id.* Eventually, she went out on disability. *Id.* During this time, Dr. Brightman did not stay in regular contact with Brian Lodwig and, after 2017, did not hear from him until April 2021. JA35, ¶¶54-55; JA144, ¶14.

On August 8, 2019, InMode went public. JA35, ¶56. Dr. Brightman first learned of InMode going public in April 2021 from Brian Lodwig. JA35, ¶55; JA144, ¶14. Dr. Brightman then contacted InMode's CEO to inquire as to the stock options. JA35, ¶57; JA144, ¶14. She was told that all 62,500[1] of her promised stock options had expired. JA35, ¶58; JA144 ¶16.

---

[1] In total, Dr. Brightman earned a total of 62,500 options: 7,500 options under the April 5, 2009 agreement, 45,000 options under the 2nd RFAL Agreement, and 10,000 options under the 3rd Fractora Agreement. InMode stock subsequently split in 2021 on 2:1 basis raising the total to

***Dr. Brightman files suit against InMode.***

Dr. Brightman filed her complaint against InMode on July 8, 2022 seeking damages for InMode's refusal to honor its commitments. A First Amended Complaint (JA25-43) was filed on December 29, 2022 and it plainly identifies the three (3) agreements Dr. Brightman had with InMode:

(1)    April 5, 2009 Email Agreement for 7,500 shares made by Mizrahy for InMode;

(2)    the RFAL Agreement made by Lodwig later in 2009 for work related to InMode's RFAL product (45,000 shares); and,

(3)    the October 11, 2011 Fractora Agreement made by Lodwig for work related to InMode's Fractora Agreement (10,000 shares).

The First Amended Complaint includes claims for Negligent Misrepresentation, Promissory Estoppel, Unjust Enrichment, Fraud, Declaratory Relief and Specific Performance, and Breach of the Implied Covenants of Good Faith and Fair Dealing.

***InMode Files A Motion to Dismiss based on a 4th Agreement (Notice of Stock Award) that is not supported by consideration and was fraudulently induced.***

On January 13, 2023, InMode filed a motion to dismiss (JA51-107) the First Amended Complaint with prejudice pursuant to Rules 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure. The District Court granted the Motion to Dismiss

---

125,000 options. The highest value following the split was $99.27 / share representing a value of $12,408,750. JA35, ¶56; JA36-37, ¶68.

in part[2] finding that forum selection provision in the disputed 4th Agreement (2010 Notice of Stock Option Award) was binding and that Plaintiff's claims had to be pursued in Israel.  The Court concluded that the 4th Agreement included a binding forum selection clause and that Dr. Brightman's claims of fraudulent inducement and lack of consideration were insufficient to defeat Defendant's Motion to Dismiss under FRCP 12(b)(3). JA165-172.

### *4th Agreement: 2010 Notice of Stock Option Award*

The circumstances surrounding InMode (Mizrahy) obtaining Dr. Brightman's signature on the 4th Agreement are set forth with particularity in the First Amended Complaint and Dr. Brighman's Declaration. JA29, ¶¶18-21; JA142, ¶¶5-9. These circumstances reveal that the 4th Agreement is not supported by consideration and that Dr. Brightman was fraudulently induced to sign the 4th Agreement.  The allegations of the First Amended Complaint and the declarations of Lodwig and Dr. Brightman demonstrate that the 4th Agreement is invalid because it was never formed, void and/or void *ab initio*.  As such, the 4th Agreement and its forum selection clause could not be enforced against Dr. Brightman.

---

[2] InMode included additional points in the motion to dismiss arguing that Dr. Brightman's claims were time barred or that the First Amended Complaint failed to state a claim on which relief can be granted under FRCP 12(b)(6).  Dr. Brightman filed an opposition to each of these other arguments.  Doc. 26.  The District Court did not consider or decide the merits of InMode's other theories under FRCP 12(b)(6). *Id.*, p3, fn3. Instead, the District Court granted the Defendant's motion to dismiss under FRCP 12(b)(3) based on the finding that the forum selection clause was enforceable.

The record shows that on or about April 10, 2010, a 4th Agreement (2010 Notice of Stock Option Award) was sent by Mizrahy to Dr. Brightman without any warning or discussion. JA29, ¶¶18-21; JA142, ¶¶5-9. Notably, by April 10, 2010, Dr. Brightman had already substantially completed her work under the April 5, 2009 Email Agreement.[3] JA142, ¶7. The 4th Agreement was materially different and contradicted the April 5, 2009 1st Agreement Dr. Brightman had already performed. For example, the 4th Agreement <u>decreased</u> the number of her stock options from 7,500 to 7,000, and it added new terms and conditions that the parties had never discussed or negotiated including, specifically, a forum selection clause. JA29 ,¶¶18-20; JA142, ¶7-8. None of these changes were supported by any new consideration for Dr. Brightman's work, which had already been performed and substantially completed. JA29, ¶20; JA142, ¶7-8.

In response to Dr. Brightman's objection to the 4th Agreement, Mizrahy told her to sign it and assured her it was merely a "placeholder" and that the parties would execute a corrected version later. JA29, ¶21; JA142, ¶¶8-9. A corrected written agreement never followed. Doc. 21, ¶21; Doc. 26-1, ¶9.

---

[3] The District Court's Opinion and Order (Doc. 29) refers to the fact that the April 5, 2009 offering Dr. Brightman 7,500 options for a 15 patient study was memorialized over email. This does not mean the agreement is unenforceable. Under New York law, an agreement for the sale of options is not required to be in writing. See UCC 8-113(a); *Petkanas v. Petkanas*, 2021 NY Slip Op. 00581, ¶¶ 1-2, 191 A.D.3d 708, 709, 140 N.Y.S.3d 586, 588. Doc. 29, p4 fn6.

In addition, on October 13, 2011, Dr. Brightman was told by the President of InMode (Brian Lodwig) that Mizrahy and the Board of Directors for InMode approved of the 2nd Agreement. JA31, ¶31. Dr. Brightman asked Lodwig if any paperwork had to be signed to secure her stock options for the RFAL work and was told "Lori, do not worry about that, no, this is coming from Moshe (Mizrahy) directly. This is all set." JA31-32 ¶32; JA142, ¶12-13. Lodwig told Dr. Brightman that paperwork was not "necessary" for her work "We (InMode) know the work you have done for us outside of the RFAL trial. This is all set." JA33, ¶41. JA143-44, ¶¶12-13.

### *The District Court grants InMode's Motion to Dismiss under FRCP 12(b)(3) after concluding the forum selection clause in the 4th Agreement was valid.*

Despite the specific allegations of the First Amended Complaint and the Declarations of Dr. Brightman and Brian Lodwig, the District Court concluded that the forum selection clause was enforceable. JA165-70. The District Court granted InMode's Motion to Dismiss under FRCP 12(b)(3) and dismissed the case without prejudice so that Dr. Brightman could pursue the action in the proper forum, Israel. JA170. This appeal was filed to reverse the trial court and remand this matter for discovery and trial. JA174.

## SUMMARY OF THE ARGUMENTS

**The District Court should be reversed because: (i) The 4th Agreement and Forum Selection Clause should not have been enforced due to the absence of consideration; (ii) the record before the Court shows that Dr. Brightman was fraudulently induced to sign the 4th Agreement and that there was pervasive fraud related to each of her claims; (iii) the 4th Agreement did not relate to or control the 2nd and 3rd contracts.**

The District Court erred in failing to recognize that the 4th Agreement lacked new or separate consideration necessary to support the reduction of options from 7,500 to 7,000, the inclusion of the forum selection clause and other terms. The District Court also failed to consider the entire circumstances demonstrating fraudulent inducement of the 4th Agreement.

When the 4th Agreement was presented to Dr. Brightman, she had already seen the patients involved and had substantially completed the work in the April 5, 2009 Email Agreement. The 4th Agreement included material changes to the April 5, 2009 Email Agreement by reducing the number of options Dr. Brightman was to receive, and including a forum selection and other provisions she had never agreed to. Since Dr. Brightman had already substantially completed her obligations, the changes in the 4th Agreement required a new or separate consideration in order to be enforceable.

In addition, the record shows fraudulent inducement and fraud. The entirety of circumstances detailed in the 118 paragraph First Amended Complaint, and in the Declarations of Dr. Brightman and Brian Lodwig, show that Dr. Brightman was

10

falsely told: (1) by Mizrahy that the 4th Agreement was merely a "placeholder" and it would be corrected later; and (2) by Brian Lodwig that she did not need a written agreement to secure her stock options and was told "not to worry" and this was "all set." The 4th Agreement was never corrected and Dr. Brightman was later told by InMode's President Brian Lodwig that it was "all set," she did not need a written agreement to secure her options and she did not need to worry.

Finally, the District Court improperly dismissed Dr. Brightman's quasi-contract and tort claims related to the 2nd and 3rd Agreements. The 4th Agreement relates only to the services provided by Dr. Brightman under the 1st Agreement and the language of InMode's stock plan does not capture Dr. Brightman's right to recover options under the 2nd and 3rd Agreement after she was fraudulently induced to sign the 4th Agreement.

Based on the entire record, this matter should be reversed and remanded for discovery and trial.

## STANDARD OF REVIEW

A.     The standard of review on whether the forum selection clause in the 4th Agreement should be enforced is set forth in *Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 384 (2nd Cir 2007):

> Where the district court has relied on pleadings and affidavits to grant a Rule 12(b)(3) motion to dismiss on the basis of a forum selection clause, our review is de novo. See *Asoma Corp. v. SK Shipping Co.*, 467 F.3d 817, 822 (2d Cir. 2006); *Gulf Ins. Co. v. Glasbrenner*, 417

F.3d 353, 355 (2d Cir. 2005) (adopting standard applied in Rule 12(b)(2) dismissals to review of Rule 12(b)(3) dismissals). In analyzing whether the plaintiff has made the requisite prima facie showing that venue is proper, we view all the facts in a light most favorable to plaintiff. See *New Moon Shipping Co. v. Man B&W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997). Contract interpretation as a question of law is also reviewed de novo on appeal. *Lee v. BSB Greenwich Mortgage L.P.*, 267 F.3d 172, 178 (2d Cir. 2001).

B.      This Court also reviews *de novo* whether the forum selection clause in the 4th Agreement should be enforced against the quasi contractual and tort claims related to the 2nd RFAL Agreement and 3rd Fractora Agreement:

> The standard of review is de novo. *Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 384 (2nd Cir 2007). A forum selection clause is enforceable if the claims in question are encompassed by the forum selection clause. *Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 386-87 (2nd Cir 2007). The question of the scope of a forum selection clause is one of contract interpretation. "[i]n order for us to affirm the district court with respect to summary judgment, we must determine that the contract is so clear that it can be read only one way." *American Flint Glass Workers Union v. Beaumont Glass Co.*, 62 F.3d 574, 580-81 (3d Cir. 1995).

*Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 384 (2nd Cir 2007).

12

**ARGUMENTS**

**THE DISTRICT COURT'S DECISION SHOULD BE REVERSED BECAUSE IT FAILED TO ACCEPT ALL OF THE ALLEGATIONS IN THE FIRST AMENDED COMPLAINT AS TRUE AND TO RESOLVE REASONABLE INFERENCES IN FAVOR OF THE PLAINTIFF. THE RECORD SHOWS:**

> **• PLAINTIFF HAD PERFORMED THE 1st AGREEMENT AND THERE WAS NO ADDITIONAL CONSIDERATION PROVIDED BY DEFENDANT TO SUPPORT ENFORCEMENT OF A NEW FORUM SELECTION PROVISION AND OTHER NEW TERMS CONTAINED IN THE 4th AGREEMENT;**

> **• THERE ARE SUFFICIENT ALLEGATIONS OF FRAUDULENT INDUCEMENT, AND THE FRAUD CLAIMS PERMEATE ALL OF PLAINTIFF'S CLAIMS, JUSTIFYING THE REFUSALTO ENFORCE THE FORUM SELECTION CLAUSE AND OTHER NEW TERMS IN THE 4TH AGREEMENT; AND,**

> **• THE 4th AGREEMENT DID NOT EXPLICTLY ENCOMPASS the 2nd and 3rd AGREEMENTS TO PREVENT CLAIMS BASED ON QUASI-CONTRACT AND TORT THEORIES FROM PROCEEDING IN THE DISTRICT COURT.**

### A. Standard of Review in the District Court.

The District Court's standard of review requires that all allegations in the Complaint must be taken as true and that reasonable inferences in the Complaint be resolved in favor of Plaintiff. *United States EPA ex rel. McKeown v. Port Auth*., 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001), citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*: Civil 2d § 1352 (1990 & Supp. 1999). On appeal, this Court's review is *de novo* where the district court has relied on pleadings

13

and affidavits to grant a Rule 12(b)(3) motion to dismiss on the basis of a forum selection clause. *See Asoma Corp. v. SK Shipping Co.*, 467 F.3d 817, 822 (2d Cir. 2006); *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) (adopting standard applied in Rule 12(b)(2) dismissals to review of Rule 12(b)(3) dismissals). All the facts must be considered in a light most favorable to plaintiff. See *New Moon Shipping Co. v. Man B&W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997). In addition, contract interpretation as a question of law is also reviewed *de novo* on appeal. *Lee v. BSB Greenwich Mortgage L.P.*, 267 F.3d 172, 178 (2d Cir. 2001).

### B. The April 5, 2009 1st Email Agreement was binding and performed before the 4th Agreement (which included the forum selection clause) was presented to Dr. Brightman. The 4th Agreement and the forum selection clause are not supported by new consideration to Dr. Brightman to modify the April 5, 2009 1st Agreement and support enforcement of the forum selection provision against her.

Drawing all "reasonable inferences" and resolving all "factual conflict in favor of plaintiff," the District Court should have decided that there was never any consideration to support a modification of the April 5, 2009 1st Agreement to enforce the forum selection provision in the 4th Agreement. The facts and reasonable inferences before the District Court show that the formation and performance of the April 5, 2009 1st Email Agreement was completed <u>before</u> the 4th Agreement was ever presented in April 2010. JA142, ¶7. The April 5, 2009 1st Email Agreement was memorialized in the April 5, 2009 email from InMode's CEO, Moshe' Mizrahy to Dr. Brightman. JA27-28, ¶15; JA141, ¶5. The email identifies the specific work

14

requested by InMode and states that Dr. Brightman is allocated "7,500 options to be vested over 3 years, as of January 1st, 2009." *Id.* Dr. Brightman completed her work under this 1st Agreement by November 2009. JA29, ¶18; JA142, ¶7.

The facts and record also show that in April, 2010, Moshe Mizrahy sent Dr. Brightman the 4th Agreement. JA142, ¶6. She recognized that it incorrectly listed 7,000 options instead of 7,500 and that it included new terms, including a forum selection clause, to which she never agreed. *Id.* Dr. Brightman contacted Mizrahy objecting to the scope of this 4th Agreement and requested revisions consistent with the April 5, 2009 1st Agreement she had already performed. JA142, ¶¶7-8. InMode's CEO Mizrahy told Dr. Brightman that he would send a corrected agreement but he insisted that she sign it as a "placeholder." JA29, ¶21; JA142, ¶8. Mizrahy assured Dr. Brightman he would send a corrected Agreement but he never did. *Id.* Dr. Brightman trusted Mizrahy and believed he would send a revised agreement to her, and signed the 4th Agreement based Mizrahy's statements it was a "placeholder." JA142, ¶¶8-9. There is nothing in the record to show that InMode provided any new consideration to support the 4th Agreement.

Courts have routinely recognized that *material modification* of a contract requires additional consideration "as evidence that the parties have in fact bargained for and agreed upon what is essentially a new contract." *Lamb v. Emhart Corp.*, 47 F.3d. 551, 554 (2d.Cir. 1995), citing *Thermoglaze, Inc. v. Morningside Gardens*

15

*Co.*, 23 Conn. App. 741, 745, 583 A.2d 1331, 1333, *cert. denied*, 217 Conn. 811, 587 A.2d 153 (1991); *see also Kakarla v. Penakalapati*, 551 F. Supp. 3d 70, 74 (W.D.N.Y. 2021) (Under New York law, a modification to a contractual agreement is unenforceable unless supported by consideration.) Material modification typically encompasses any contractual provision that deals with a significant legal issue and includes any term "which a party would reasonably regard as a vitally important element of their bargain." *United States v. Jackson*, No. 21-CR-537-LTS, 2022 U.S. Dist. LEXIS 112285, at *7 (S.D.N.Y. June 24, 2022), citing *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 364 (E.D.N.Y. 2015) and 17A Am.Jur.2d Contracts § 183 (2022).

Many courts (including the New York Southern District) have held that "a proposal to add a forum selection clause to the terms of an already existing agreement amounts to a proposal to materially alter that agreement." *Berkson*, 97 F. Supp. 3d at 393.[4]  Courts have also specifically held that a "forum selection clause constitute[s] additional terms under § 2-207(2) of the UCC," and therefore, the addition of a forum selection clause constitutes a material alteration that "requires

---

[4] Citing *Hardwire*, *LLC v. Zero Int'l, Inc.*, No. 14-CV-54, 2014 U.S. Dist. LEXIS 146364, 2014 WL 5144610, at *8 n.8 (D. Del. Oct. 14, 2014); *Trans-Tec Asia v. M/V Harmony Container*, 435 F.Supp.2d 1015, 1025 (C.D. Cal. 2005) ("[C]ourts have generally found forum-selection clauses to be material alterations." (collecting cases)), *aff'd*, 518 F.3d 1120 (9th Cir. 2008); *Daisy Indus., Inc. v. Kmart Corp.*, No. 96-CV-4211, 1997 U.S. Dist. LEXIS 16135, 1997 WL 642553, at *3-4 (S.D.N.Y. Oct.17, 1997) (finding that forum selection clause must be specifically consented to).

the express consent of the other party." *Daisy Indus. v. Kmart Corp.*, 96 Civ. 4211 (AGS) (RLE), 1997 U.S. Dist. LEXIS 16135, at *11 (S.D.N.Y. Oct. 15, 1997).[5] This matter is no exception. A forum selection clause was not part of the parties' April 5, 2009 contract and there was no consideration to support this material change of the Agreement with the 4th Agreement's forum selection provision. The District Court's Order Granting the Motion to Dismiss and Judgment should be reversed and this matter remanded for discovery and trial.

**C. Dr. Brightman's claims rest in fraud and the complaint is permeated with allegations of fraud. She was fraudulently induced to sign the 4th Agreement which included the forum selection clause. She was fraudulently told she did not need paper work to secure her stock options and everything was all set. The 4th Agreement and forum selection clause should not be enforced against Dr. Brightman.**

*Elements of fraudulent inducement, fraud and fraud in factum.*

The elements of a fraudulent inducement claim are (1) a false representation, (2) that was made for the purpose of inducing another to act on it, (3) that the party to whom the representation was made justifiably relied on it, and (4) was damaged. *Perrotti v. Becker, Glynn, Melamed & Muffly LLP*, 82 A.D.3d 495, 498, 918 N.Y.S.2d 423 (1st Dept. 2011). A successful fraudulent inducement claim should

---

[5] Citing *Lorbrook Corp. v. G & T Indus., Inc.*, 162 A.D.2d 69, 73, 562 N.Y.S.2d 978, 980 (App. Div. 1990); *General Instrument Corp. v. Tie Manufacturing, Inc.*, 517 F. Supp. 1231, 1235 (S.D.N.Y. 1981); *Pacamor Bearings, Inc. v. Molon Motors & Coil, Inc.*, 102 A.D.2d 355, 357, 477 N.Y.S.2d 856, 858 (3d Dep't 1984); National Machinery Exchange, Inc. v. Peninsular Equipment Corp. [*12], 106 Misc. 2d 458, 459, 431 N.Y.S.2d 948, 949 (Sup. Ct. N.Y. Co. 1980).

be "premised on misrepresentations [of material fact] that were made before the formation of the contract and that induced the plaintiff to enter the contract." *Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir. 1994) (internal citation omitted); *Revak v. SEC Realty Corp.*, 18 F.3d 81, 91 (2d Cir. 1994) (Fraud *in factum* arises where "the misrepresentation is regarded as going to the very character of the proposed contract itself, as when one party induces the other to sign a document by falsely stating that it has no legal effect." (citing E.A. Farnsworth, Contracts § 4.10 (1990)). The elements of fraud are (1) a misrepresentation or a material omission of fact which was false, (2) knowledge of its falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages" *Fox Paine & Co., LLC v Houston Cas. Co.*, 153 AD3d 673, 677, 60 NYS3d 294 (2017).

*Pleading requirements for fraud claims.*

Generally, under Rule 9(b), a claim for fraud must allege "the time, place, speaker, and sometimes even the content of the alleged misrepresentation." *Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir. 1990). However, Rule 9(b) must be reconciled with Rule 8, which requires short and concise statement of claims. *Felton v. Walston & Co.*, 508 F.2d 577 (2d Cir. 1974). The particularity requirement of Rule 9(b) does not stand isolated from the remainder of Federal Rules; it must be read in conjunction with Federal Rule of Civil Procedure 8 which requires that pleadings be simple, concise and direct and Federal Rule of Civil Procedure 8(f)

18

which requires that pleadings be construed so as to do substantial justice. *Clairdale Enters. v. C. I. Realty Investors*, 423 F. Supp. 257 (S.D.N.Y. 1976). Here, as set forth below, the 118 paragraphs First Amended Complaint (JA25-43) and the additional parts of the record, show that the elements for fraudulent inducement, fraud and fraud *in factum* are present. The Motion to Dismiss should have been denied.

> *The record shows that the fraud claims were sufficiently stated in the First Amended Complaint and are otherwise set forth and explained in the record.*

The District Court's Opinion and Order incorrectly limits consideration of Dr. Brightman's fraudulent inducement claim to Mizrahy's statement that the 4th Agreement was merely a "placeholder" and the Court decided this "is not enough." JA168. The District Court failed to consider Brian Lodwig's repeated assurances to Dr. Brightman she was "covered for the options," that no paperwork was needed, she was "all-set," she did not need to sign any "necessary paperwork," and paperwork was not needed. All of these statements are false, they are a part of the District Court's record, and they were not properly considered in the context of the fraud and fraudulent inducement. JA31- 33, ¶¶ 29, 31-32, 41; JA143044, ¶¶ 12-13.

The "facts and reasonable inferences" show that performance of the April 5, 2009 1st Email Agreement was completed <u>before</u> the 4th Agreement was ever presented or formed and in April 2010. The record also shows that in April, 2010, Moshe Mizrahy sent Dr. Brightman the 4th Agreement. JA142, ¶6. She recognized that it incorrectly listed 7,000 options instead of 7,500 and that it included new terms,

19

including a forum selection clause, which she never agreed to. *Id.*  Dr. Brightman contacted Mizrahy objecting to the scope of this 4th Agreement and requested revisions consistent with the April 5, 2009 1st Agreement she had already performed. JA142, ¶7-8. The First Amended Complaint and Dr. Brightman's Declaration show that she challenged the new 4th Agreement as improperly including new terms which were not even discussed or agreed to by the parties. JA29, ¶¶19-21; JA142, ¶¶6, 8-9.

InMode's CEO Mizrahy told Dr. Brightman that he would send a corrected agreement but he insisted that she sign it as a "placeholder." JA142, ¶8. Mizrahy assured Dr. Brightman he would send a corrected Agreement but he never did. *Id.* Dr. Brightman trusted Mizrahy and believed he would send a revised agreement to her but she signed the 4th Agreement based Mizrahy's statements it was a "placeholder." *Id*. ¶¶8-9.  Accepting these facts as true, and allowing Dr. Brightman the reasonable inferences from the record, they demonstrate that Dr. Brightman was lied to about the 4th Agreement merely being a "placeholder" and she was fraudulently induced to sign.

The record further explains why she failed to pursue Mizrahy about the placeholder 4th Agreement. Brian Lodwig's later statements to Dr. Brightman show additional fraud and add further context to the case. Dr. Brightman relied on

Lodwig's statements about being all set and not needing any paperwork and believed everything was "all set." JA33, ¶41; JA143-44, ¶¶12-13.

On October 13 2011, Dr. Brightman met with Lodwig and confirmed 45,000 stock options were owed when InMode went public for her work on the 2nd RFAL Agreement. JA31, ¶31; JA45, ¶8; JA142, ¶12. Dr. Brightman had been working on the RFAL 2nd Agreement between 2009 and the October 13, 2011 meeting with Lodwig. JA30-31, ¶27. Dr. Brightman specifically asked Brian Lodwig about the status of the 45,000 stock options she had earned for her RAFL work. JA31, ¶31; JA45, ¶8; JA143 ¶12. Brian Lodwig acknowledged she had earned the 45,000 stock options. *Id.* He assured her that "we know all the work you have done for us," "she was covered for those options" that she did not need a written agreement, no paperwork was necessary, and that she was "all set." JA31-23, ¶¶31-32, 37-39, 41;JA 143, ¶¶12-13.

In sum, by October 13, 2011, InMode's CEO Mizrahy had told Dr. Brightman that the 4th Agreement was merely a placeholder and would be replaced. InMode's President Lodwig assured Dr. Brightman she was "all set" and assured her a written agreement and paperwork were not required for new terms. Their statements are fraudulent. This fraud permeates Dr. Brightman's entire Complaint and provides the justification for refusal to enforce the forum selection clause. Where the alleged fraud is "so great as to vitiate the entire agreement[,]" then the agreement's forum-

21

selection clause will not be enforced. *Signature Fin. LLC v. Neighbors Glob. Holdings*, LLC, 281 F. Supp. 3d 438, 452 (S.D.N.Y. 2017); *DeSola Grp. v. Coors Brewing Co.*, 199 A.D.2d 141, 141, 605 N.Y.S.2d 83, 84 (App. Div. 1993) (forum selection clause unenforceable because the record was replete with allegations of fraud).

InMode intended to enforce the 4th Agreement and Dr. Brightman was left with a reasonable understanding that she did not have to take any further action to receive the options she had earned. Dr. Brightman's Complaint makes specific allegations regarding the 4th Agreement, the circumstances leading up to her signature on the 4th Agreement as a "placeholder," and Brian Lodwig's statements repeatedly assuring Dr. Brightman that she did not need a written agreement and was all set. JA55-43, ¶¶18-21, 31-32, 39, 41, 63, 67, 87-97, 100-104; JA142-43, ¶¶ 6, 8-9. Dr. Brightman relied on these statements, and as a result, she has been damaged because InMode refuses to honor its commitment. This is an unconscionable result.

Dr. Brightman knew and trusted Mizrahy because she had worked with him before and received compensation without a problem. JA141, ¶2. Mizrahy's statement to Dr. Brightman in April 2010 that the 4th Agreement was simply required as a "placeholder" was a false representation intended to induce her to sign and return it. The 4th Agreement was not required as a placeholder and that is a false statement of fact. *See Petkanas v. Petkanas*, 2021 NY Slip Op. 00581, ¶¶ 1-2, 191

A.D.3d 708, 709, 140 N.Y.S.3d 586, 588 (Sale of stock options is not required to be in writing per UCC 8-113(a).)

The 4th Agreement is a complex commercial document which Dr. Brightman was initially told by Mizrahy was just a placeholder. Mizrahy's assurance he would send Dr. Brightman a corrected agreement was a false representation. JA29, ¶21. Lodwig's later statement in October 2011 that she did not need an agreement, she was "all set" and no paperwork was required are false statements.

Mizrahy's statements were made in April 2010 during formation of the 4th Agreement, before it was signed and returned by Dr. Brightman. JA29, ¶21. Lodwig's later statements expanded the fraud. Dr. Brightman relied on the false statements justifiably by signing the 4th Agreement thinking it was merely a placeholder. JA29, ¶21; JA142, ¶¶8-9. The 4th Agreement modified and limited Dr. Brightman's rights by including the forum selection clause, reducing her option award by 500 shares and by including other terms such as when she needed to exercise the options instead of at the time InMode went public. Based on Mizrahy's false statements, Dr. Brightman's reasonable reliance, and the elements for fraudulent inducement, fraud, and fraud in factum are present.

Likewise, Brian Lodwig's statements in October 2011 that Dr. Brightman was "all set" and no further paperwork was required are clear in the record. The Complaint alleges that Dr. Brightman was asked to perform work for InMode by the

CEO (Mizrahy) and President (Lodwig). JA25-43, ¶¶15-18, 24-26, 37-40. Their authority to act for InMode was apparent. Doc 21, ¶¶16, 24, 90. The Complaint also alleges that Defendant knew or should have known statements by Mizrahy and Lodwig were false, that Defendant intended Dr. Brightman rely on the statements, that Dr. Brightman reasonably relied on their statements, and that she was damaged. JA39, ¶¶87, 91-96.

The District Court recognized that it "must accept as true the facts alleged in the Complaint, but may also consider certain evidence outside the pleadings, including affidavits." JA165, fn2. The record shows that the fraud theories were adequately pleaded and are established by the record.[6] The actions of Mizrahy and Lodwig demonstrate the fraud and fraudulent inducement. The dates, speakers and fraudulent statements are specifically alleged in the First Amended Complaint and any deficiency could have been cleaned up with an amended pleading. Accepting all of the facts in the record as true, and drawing reasonable inferences in favor of Dr. Brightman, shows that Dr. Brightman was fraudulently induced to sign the 4th Agreement. Coupled with the later fraud by Lodwig, the District Court should not

---

[6] When a liberal reading of the complaint gives "any indication" that a valid claim might be stated, the District Court should grant leave to amend. *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795-96 (2d Cir. 1999) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)); *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); *Nerney v. Valente & Sons Repair Shop*, 66 F.3d 25, 28 (2d Cir. 1995). Here, there has been no bad-faith or delay by Plaintiff and the entire record demonstrates viable claims.

have enforced the 4th Agreement and the forum selection provision. The District Court's Order and Judgment Granting the Motion to Dismiss should be reversed and this matter remanded for discovery and trial.

> ### D. The Court Erred in Concluding the 2nd and 3rd Agreements were subsumed into and subject to dismissal by the 4th Agreement and the Forum Selection Clause.

The Court also incorrectly concluded, without discussion, that the 2nd and 3rd Agreements established by President Brian Lodwig for InMode, and all of the other quasi-contract and tort claims in the Complaint related to these Agreements, were covered by the 4th Agreement. However, the 4th Agreement does not specifically include the options promised by InMode through Lodwig in exchange for Dr. Brightman's performance of the 2nd RAFL Agreement and the 3rd Fractora Agreement. For both the 2nd RFAL Agreement and the 3rd Fractora Agreement, Brian Lodwig's repeated assurances to Dr. Brightman that she was "covered for the options," that no paperwork was needed, she was "all-set," she did not need to sign any "necessary paperwork," and paperwork was not needed. JA31-33, ¶¶ 29, 31-32, 41; JA143-44, ¶¶ 12-13. In fact, no paperwork was ever provided by InMode to show that Dr. Brightman had been awarded 45,000 options under the 2nd RFAL Agreement and 10,000 shares under the 3rd Fractora Agreement. There was never a Notice of Stock Option Award for these options. This is a sufficient basis to refuse to enforce the 4th Agreement against the 2nd and 3rd Agreements. *Cf. Fundamental*

*Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P.*, 7 NY3d 96, 104, 850 N.E.2d 653, 817 N.Y.S.2d 606 (2006) (A contractual right may be waived if the waiver is voluntary, knowing, and intentional). *General Motors Acceptance Corp. v Clifton-Fine Cent. School Dist.*, 85 NY2d 232, 236, 647 N.E.2d 1329, 623 N.Y.S.2d 821 (1995) (Waiver "may be established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage.").

In addition, the language of the 4th Agreement does not expressly cover the 2nd and 3rd Agreement. The 4th Agreement was attached as Exhibits to Defendant's Motion to Dismiss. JA87-108. These Exhibits reference an award of 7,000 shares related to the 1st April 5, 2009 Email Agreement. JA87. There is no mention, and Defendant provided no documentation, to show that Dr. Brightman received a Notice of Stock Option Award for the 55,000 options earned under the 2nd RFAL and 3rd Fractora Agreements.

The Notice of Stock Option Award (JA87) provided with Defendant's Motion to Dismiss refers to the specific award of 7,000 stock option. The Notice expressly states: "NOTHING IN THIS NOTICE, THE OPTION AGREEMENT OR THE PLAN SHALL CONFER UPON GRANTEE ANY RIGHT WITH RESPECT TO FUTURE AWARDS. . . ." JA88. However, the Notice does not include express language that captures or includes the 55,000 options due to Dr. Brightman for her work under the 2nd and 3rd Agreements.

The language of the Stock Option Award Agreement provides in part: ([T]he "**Company**"), hereby grants to the Grantee (the "**Grantee**") named in the Notice of Stock Option Award (the "**Notice**"), an option (the "**Option**") to purchase the Total Number of Ordinary Shares of the Company . . . set forth in the Notice. . . . " JA90. Each of the words in bold are defined terms. Section 8 of the Award Agreement, captioned Grantee's Declarations, does not include any reference to 55,000 options owed for the 2nd or 3rd Agreements and, there is no language in section 8 to cover the 55,000 options. JA91-92. Section 10 provides for questions and interpretation of the Notice, Option Agreement and Stock Option Plan are to be resolved by the Administrator. JA92. However, again, this does not refer to the 55,000 options owed for the 2nd and 3rd Agreements. Section 11 (JA92) is a merger provision that relates to prior agreements but does not exclude the 2nd and 3rd Agreements and options which confirmed in October 2011 by Brian Lodwig. Section 12 provides for Governing Law and Jurisdiction and specifically refers to "the Notice, the Plan and this Option Agreement." JA93. There is no provision that specifically captures and includes the 2nd and 3rd Agreements. The remainder of this Agreement likewise fails to expressly provide for the 2nd and 3rd Agreements. JA93.

The Option Plan (JA96-107) includes defined terms. Section 3 is captioned "Stock Subject to the Plan" and includes no reference the 2nd and 3rd Agreements. JA100. Indeed, section 3(b) refers only to "Any shares covered by an Award (or

27

portion of an Award)." *Id.* Again, Dr. Brightman never received a Notice of Stock Option Award for the 55,000 options earned under the 2nd and 3rd Agreement. Section 8(a) refers to the procedure to exercise an Award. JA104. The language does not expressly provide for the 2nd and 3rd Agreements. The remainder of the Option Plan does not expressly provide for the 2nd and 3rd Agreements.

The words and phrases used by the parties in a contract must be given their plain meaning. Where the language of a contract is clear or unambiguous, words and phrases should be given their plain meaning.'" *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.,* 564 F.3d 81, 88 (2d Cir. 2009). The district court improperly granted InMode's Motion to Dismiss of claims related to the 2nd and 3rd Agreements because these were not provided for in the 4th Agreement. For the above reasons, Dr. Brightman respectfully requests that the Court's Judgment dismissing the case without prejudice pursuant to FRCP 12(b)(3) be reversed.

## CONCLUSION

Wherefore, Dr. Brightman prays that the Court reverse and remand the judgment of dismissal and remand to the District Court for discovery and trial.

Dated:    November 9, 2023
New York, New York

### BERLANDI NUSSBAUM & REITZAS LLP

By: */s/ Joshua T. Reitzas_____*
Joshua T. Reitzas (JR2149)
125 Park Avenue, 25th Floor
New York, New York 10017
(212) 804-6329 (Ph)
(646) 461-2312 (fax)
*Attorneys for the Appellant*
*Dr. Lori A. Brightman*

# CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Fed. R. App. P. 32(a), that according to the word count feature of the word processing program used to prepare this brief, the brief contains 6,241 words, is proportionately spaced, and complies with the type-face requirements and length limits of Rule 32(a)(5)-(7) and Local Rule 32.1.

Dated:     November 9, 2023
           New York, New York

### BERLANDI NUSSBAUM & REITZAS LLP

By:  */s/ Joshua T. Reitzas*
     Joshua T. Reitzas (JR2149)
     125 Park Avenue, 25th Floor
     New York, New York 10017
     (212) 804-6329 (Ph)
     (646) 461-2312 (fax)
     *Attorneys for the Appellant*
     *Dr. Lori A. Brightman*